UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ABDUR FUSEINI,

                                                              Plaintiff,

            vs.

DANIEL A. SENKOWSKI, Superintendent,                 9:02-CV-1127
Clinton Correctional Facility; T. KURTZ;             (S.J. McAvoy)
W. PERKINS; JEFFREY REISDORF;
R. GLASCOCK; DOCTOR TIM QUAIN,

                                                              Defendants.

_____

APPEARANCES                              OF COUNSEL

ABDUR FUSEINI
Plaintiff pro se

ELIOT SPITZER                            BRIDGET ERIN HOLOHAN
Attorney General of the                  Asst. Attorney General
State of New York
Attorney for defendants

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the

Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28

U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

In this amended civil rights complaint (Dkt. No. 6), plaintiff alleges that he was

subjected to excessive force and a subsequent denial of proper medical care, for which

plaintiff seeks monetary relief.

Presently before the court is defendants' motion for summary judgment

pursuant to FED. R. CIV. P. 56. (Dkt. No. 36).  This motion was initially filed on

January 26, 2004.  On July 13, 2004, I granted plaintiff's motion to stay the action and

a decision on the motion. (Dkt. No. 41).  The defendants' summary judgment motion

was initially stayed until September 30, 2004.  On October 1, 2004, I granted another

extension of the stay at plaintiff's request. (Dkt. No. 46).  On December 16, 2004, I

denied plaintiff's motion to extend the stay, and ordered a response to defendants'

motion for summary judgment to be filed by January 28, 2005. (Dkt. No. 49).  On

February 2, 2005, I granted a final extension at plaintiff's request until March 18,

2005. (Dkt. No. 50).  Plaintiff has not filed any response as of the date of this report.

　　　　For the following reasons, this court agrees with defendants and will

recommend dismissal of the complaint.

## DISCUSSION

**1.　　Summary Judgment**

　　　　Summary judgment may be granted when the moving party carries its burden of

showing the absence of a genuine issue of material fact.  FED. R. CIV. P. 56; *Thompson*

*v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted).  "Ambiguities or

inferences to be drawn from the facts must be viewed in the light most favorable to the

party opposing the summary judgment motion." *Id*.  However, when the moving  party

has met its burden, the nonmoving party must do more than "simply show that there is

some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co.,*

2

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id. See also Burt Rigid Box v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002)(citations omitted).

**2.**   **Facts**

Plaintiff claims that on April 17, 2000, while he was incarcerated in the Special Housing Unit (SHU) of Clinton Correctional Facility, he was escorted to the shower area by defendants Reisdorf and Glascock. Amended Complaint (AC) ¶ 10.  Although the complaint is not clear, it appears that plaintiff claims that defendant Perkins followed them to the shower area.  Plaintiff states that after his shower, and while he was being escorted back to his cell by defendants Reisdorf and Glascock, defendant Perkins attacked plaintiff "in a surprise move" and began beating plaintiff.  Plaintiff claims that defendants Reisdorf and Glascock failed to intervene and instead allowed defendant Perkins to inflict serious injuries on plaintiff. AC ¶ 12-13, 24.

Plaintiff also alleges that prior to April 17, 2000, he wrote letters to defendant Senkowski asking for a transfer because plaintiff was being "threatened" by corrections officers. AC ¶ 10.  Plaintiff claims that defendant Senkowski's failure to transfer plaintiff constituted deliberate indifference to plaintiff's safety. AC ¶ 21. Plaintiff also claims that defendant Kurtz, a supervisor in SHU, failed to protect

3

plaintiff from the assault, and that defendant Senkowski "laughed" when he found out about plaintiff's injuries. AC ¶ 23.

Defendants do not dispute that plaintiff was involved in a "use of force" on April 17, 2000 for which he required medical attention. Plaintiff claims that he was denied proper medical care by "Dr." Quain because the doctor did not suture plaintiff's wounds and did not prescribe adequate pain medication. Plaintiff also alleges that defendant Quain placed plaintiff on a restricted diet, causing plaintiff's diabetes. AC ¶ 27. Finally, plaintiff claims that defendant Perkins was retaliating against plaintiff for his "several" grievances and that after filing these grievances, plaintiff was subjected to a "drug and alcohol shakedown" and was given an additional sentence by the Clinton County Court. AC ¶¶ 18-19, 30. Plaintiff also claims that there was a plot to "assassinate" his character.

Defendants have filed their motion for summary judgment, arguing that plaintiff has failed to exhaust his administrative remedies; that defendants Kurtz and Senkowski were not personally involved in the alleged constitutional violations and cannot be maintained in this action based upon respondeat superior; and that defendant Quain is not a doctor, could not have sutured plaintiff or prescribed different pain medication, and had nothing to do with placing plaintiff on a restricted diet. Defendants also argue that they are entitled to qualified immunity.

4

**3.      Exhaustion of Administrative Remedies**

Defendants argue that plaintiff has not exhausted his administrative remedies as required by the Prison Litigation Reform Act, (PLRA), 42 U.S.C. § 1997e(a).  It is true that the PLRA exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes and regardless of the subject matter of the claim. *See e.g. Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004).  The Second Circuit has also held, however, that the exhaustion requirement is an affirmative defense, not a jurisdictional prerequisite, and there are instances in which the exhaustion requirement may either be waived or excused. *Id.* at 675. (citations omitted).

At the same time that the Second Circuit decided *Giano*, it also decided four other related cases, clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement and specifying various instances in which the requirement could be waived or excused. *See Hemphill v. State of New York*, 380 F.3d 680 (2d Cir. 2004)(remanding case to determine if defendant's alleged threats constituted "special circumstances" justified plaintiff's failure to exhaust); *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004)(whether failure to exhaust may be justified because plaintiff obtained favorable rulings on his grievances, but the relief that he was supposed to obtain was never forthcoming); *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004)(whether including claims in a disciplinary appeal may suffice for the exhaustion

5

requirement); *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004)(complete dismissal is not required when plaintiff brings both exhausted and unexhausted civil rights claims).

In this case, defendants claim that plaintiff never brought a grievance regarding his medical care.  With respect to the assault, defendants argue that although plaintiff did bring a grievance after the incident in question, the main subject of the grievance was a denial of meals and access to the law library and the inclusion of a statement that he was being assaulted repeatedly by corrections officers was insufficient to alert prison officials to this particular incident.  Additionally, defendants state that plaintiff failed to appeal the denial of the grievance.

Defendants have submitted the Declaration of Tara Brousseau, Inmate Grievance Supervisor at Clinton Correctional Facility. Brousseau Decl. (Attachment No. 14 to Dkt. No. 36).  On May 8, 2000, plaintiff filed Grievance No. 41328-00. Ex. to Brousseau Decl.  In this grievance, plaintiff claimed that the officers were skipping his cell, and he had not received his regular meals. *Id.*  He also complained that he had not received a "jack" that he had requested and that there was a problem with the law library. *Id.*  Further down on the grievance form, plaintiff stated that "this unusual punishment was coursed [sic] by Sgt. Maynard." *Id.*  The last sentence of the grievance stated that "I have been assaulted repeatedly by C.O.'s." *Id.*

The grievance was denied by the Superintendent's Office[1] on May 23, 2000. *Id.* at 2.  The last sentence of the denial stated that "[t]he Lieutenant has found no evidence of inappropriate staff behavior." *Id.*  That is the only reference in the grievance denial to plaintiff's claim of "repeated" assaults.  The court would point out that plaintiff never indicated when or by whom he was allegedly assaulted, thus, there was no way for the grievance committee or for the Superintendent's Office to investigate the specific incident that is the subject of this federal complaint.  There was also no statement or claim that any particular officers were retaliating against plaintiff.

Ms. Brousseau states in her declaration that plaintiff did not appeal the Superintendent's decision. Brousseau Decl. ¶¶ 8-9.  In order to appeal, plaintiff would have to have completed the bottom of the Superintendent's Decision Form and filed the appeal with Ms. Brousseau's office. *Id.* ¶ 8.  Ms. Brousseau's office is then responsible for forwarding the appeal to the Central Office Review Committee (CORC) in Albany. *Id.*  A review of the form attached to Ms. Brousseau's declaration shows that the appeal portion of the form was not completed, and plaintiff did not appeal the grievance. *Id.* ¶ 9.  Ms. Brousseau also states that a review of all the grievances filed by plaintiff in 2000 show that he never filed a grievance regarding his

---

[1] It should be noted that Superintendent Senkowski did not review the grievance himself. Although the signature itself is not legible, it is clear that it is the signature of a First Deputy Superintendent, not Superintendent Senkowski.

medical care after the April 17, 2000 incident.

Defendants have also submitted the affidavit of Thomas Eagen, Director of the Inmate Grievance Program for the Department of Correctional Services (DOCS). Eagen Aff. ¶ 1.  Mr. Eagen is also the custodian of the records maintained by the CORC. *Id.*  Mr. Eagen states that a review of the CORC records after the April 17, 2000 incident confirmed that plaintiff never filed an appeal of an alleged use of excessive force at Clinton. *Id.* ¶¶ 4-5.

Plaintiff has not shown that any of the exceptions to the exhaustion requirement apply to him.  The court is aware that plaintiff apparently has some mental health issues that have disrupted his ability to pursue this action.  This court granted plaintiff several extensions based on his claims of needing additional time.   The court notes that plaintiff did file a grievance less than one month after the incident, and clearly he was aware of the process, thus his mental health issues did not interfere with his ability to file a grievance.  He simply chose not to appeal the Superintendent's decision.  Plaintiff had also failed to describe the assault or assaults to which he was referring in his grievance in order that the prison officials might have investigated the matter properly.

The court would point out that on September 26, 2003, defense counsel took

8

plaintiff's deposition. Holohan Aff. Ex. D[2] (deposition transcript)(T).  At the deposition, plaintiff testified that he filed a grievance naming defendant Perkins and appealed the grievance to Albany. (T. 21-23).  Plaintiff also alleged that he was interviewed regarding this matter by the Inspector General's Office.  However, there is no documentation and no showing other than plaintiff's bare allegation that he brought these appeals.  In fact, the documents support the opposite conclusion.  Thus, plaintiff has not exhausted his administrative remedies, and the court could recommend dismissal without prejudice on this basis alone.[3]  However, there are other bases to recommend dismissal, and they will be discussed below.

## 4.    **Respondeat Superior**

Personal involvement is a prerequisite to the assessment of damages in civil rights actions. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.), *cert. denied*, 434 U.S. 1087 (1978).  The doctrine of respondeat superior is inapplicable to section 1983 claims.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973).

In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit

---

[2] Defense counsel refers to exhibits by letter in her affidavit.  Unfortunately, the actual exhibits are not marked with the appropriate letters, and the court is basing its assumption of the appropriate exhibit by its description.  The court will refer to the letters that defense counsel states in her affidavit.

[3] If plaintiff can show that he properly exhausted his excessive force and failure to protect claims against defendants Perkins, Reisdorf, and Glascock, he may proceed with those claims **alone** against only those three defendants.

9

detailed the various ways in which a defendant can be personally involved, and thus be subject to individual liability, in a constitutional deprivation. A supervisory official is said to have been personally involved if that official directly participated in the infraction. *Id*. A supervisory official is said to have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id*. Personal involvement of a supervisory official is said to exist if he or she created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id*. Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id*.

In this case, plaintiff has named Daniel Senkowski, Superintendent of Clinton Correctional Facility and Sergeant T. Kurtz, the SHU supervisor. Neither defendant Senkowski nor defendant Kurtz participated in or witnessed the alleged assault. Thus, plaintiff must establish one of the other ways outlined above to show that these supervisory defendants were personally responsible for the alleged violations.

In the amended complaint, plaintiff alleged that he wrote letters to defendant Senkowski requesting a transfer to another cell or to another facility because of conflicts with defendant Perkins. AC ¶ 21. Defense counsel requested that plaintiff produce these alleged communications with defendant Senkowski. Although plaintiff sent defense counsel some correspondence, none of it was dated prior to April 17,

10

2000, and none of it dealt with the alleged assault on plaintiff or defendant Senkowski's possible knowledge of any danger to plaintiff. Holohan Aff. Ex. E.  On November 20, 2003, defense counsel sent the correspondence back to plaintiff with a letter stating that plaintiff's submission was not responsive to defense counsel's request and giving plaintiff another chance to submit the appropriate documents. Holohan Aff. Ex. F.  Counsel informed plaintiff that if she did not receive responsive documents within 30 days, she would assume that no responsive documents existed. *Id.*  Defense counsel states that plaintiff never responded to the second request for documents. Holohan Aff. ¶ 8.

Thus, there is no indication that defendant Senkowski was in any way personally responsible for the alleged assault.  Additionally, at plaintiff's deposition, he was asked about defendant Kurtz. (T. 33-34).  Plaintiff stated that he named Kurtz as a defendant because he was a supervisor and left the area unsupervised.[4]  However, plaintiff stated that defendant Kurtz was ***not*** in the area when the incident occurred. Thus, defendant Kurtz was not personally involved in the incident.  The fact that the supervisory officials may have learned about the assault later would not make them personally responsible for the prior assault.

---

[4] To the extent that plaintiff might be claiming that defendant Kurtz was negligent in leaving his post, negligence is not actionable under section 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).

11

**5.**   **Failure to Protect**

An inmate has a right under the Eighth and Fourteenth Amendments to be spared "the 'unnecessary and wanton infliction of pain.'" *Hendricks v. Coughlin*, 942 F.2d 109, 112 (2d Cir. 1991)(citation omitted).  An inmate's claim that a defendant's deliberate indifference in protecting him from the violence of other inmates states a claim under section 1983. *Id.* at 113.  In order to state an Eighth Amendment claim for failure to protect an inmate, the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm, and prison officials acted with deliberate indifference to that risk and the inmate's safety.  *Farmer v. Brennan*, 511 U.S. 825, 836 (1994).  The plaintiff must show that prison officials ***actually knew of and disregarded*** an excessive risk of harm to the inmate's health and safety.  *Id.* at 837.  The defendant must be aware of the facts from which the inference can be drawn that a substantial risk of serious harm exists and the defendant must also draw that inference.  *Id.*

The lack of personal involvement of defendants Senkowski and Kurtz also supports a decision in their favor on the merits of a failure to protect claim.  Even assuming plaintiff did write to Senkowski or speak with Kurtz, there is no indication, and plaintiff conceded at his deposition, that plaintiff ever stated that he was in danger of defendant Perkins assaulting him.  At his deposition, plaintiff stated that he told defendant Kurtz about Perkins's harassment, name calling, and threats to file false

12

misbehavior reports. (T. 34).  However, there was no indication that defendant Kurtz

would have drawn the inference that plaintiff was in danger of being assaulted.  The

same is true for defendant Senkowski.  Plaintiff admitted at his deposition that

defendant Perkins never threatened violence prior to April 17, 2000. (T. 35).  Finally,

even plaintiff's amended complaint alleges that defendant Perkins attacked plaintiff

"in a surprise move."  There is no indication that anyone was forewarned of this

alleged behavior.  Thus, the complaint may be dismissed as against defendants Kurtz

and Senkowski.

## 6.    Medical Care

In order to state a claim based on constitutionally inadequate medical treatment,

the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate

indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A

plaintiff must allege that his access to physicians for necessary medical care was

unreasonably delayed or denied, or that prescribed medical treatment was not

administered. *Tomarkin v. Ward*, 534 F. Supp. 1224, 1240 (S.D.N.Y. 1982) (citing

*Todaro v. Ward*, 431 F. Supp. 1129, 1133 (S.D.N.Y.)), *aff'd*, 565 F.2d 48 (2d Cir.

1977).

The court would point out that disagreement with prescribed treatment does not

rise to the level of a constitutional claim. *Ross v. Kelly*, 784 F. Supp. 35, 44

(W.D.N.Y. 1992). Prison officials have broad discretion in determining the nature and

character of medical treatment afforded to inmates. *Id*. (citations omitted). An inmate does not have the right to treatment of his choice. *Id*. (citing *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986)); *Jackson v. Fair*, 846 F.2d 811, 817-18 (1st Cir. 1988) Additionally, negligence by physicians, even amounting to malpractice does not become a constitutional violation because the plaintiff is an inmate. *Estelle*, 429 U.S. at 107. *See also Daniels v. Williams*, 474 U.S. 327, 332 (1986)(negligence not actionable under section 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under section 1983.

In this case, plaintiff alleges that "Dr." Quain denied plaintiff adequate medical care because he did not suture plaintiff's head injury, did not prescribe adequate pain medication, and did not order x-rays. Defendant Tim Quain has submitted an affidavit. In defendant Quain's affidavit, he states that he is not a doctor, but rather is a registered nurse. Quain Aff. ¶ 2. Nurse Quain states that he examined plaintiff immediately after the April 17, 2000 incident and noticed that plaintiff had a laceration to the back of his head requiring sutures. *Id*. ¶¶ 4-5. Because plaintiff required sutures, and Nurse Quain was ***not*** authorized to suture patients, plaintiff's care was transferred to Dr. Ellen, who sutured the laceration. *Id*. ¶¶ 6-7. The inmate injury report shows that Nurse Quain sent plaintiff to the facility hospital for sutures. Quain Aff. Ex. A. Plaintiff's Ambulatory Health Record shows that plaintiff received sutures to close the laceration in the back of his head. Quain Aff. Ex. B at 1. Although

plaintiff alleges that he should have received sutures in his mouth, there is no indication that plaintiff had an injury to his mouth as a result of the April 17, 2000 incident.

Plaintiff also claims that defendant Quain did not prescribe adequate pain medication. Defendant Quain states that Dr. Ellen prescribed Tylenol for plaintiff. Quain Aff. ¶ 11. Additionally, defendant Quain states that when an individual gets a head injury, it is not advisable to prescribe anything stronger than Tylenol so that neurological examinations will not be impaired. *Id.* ¶ 12. Defendant Quain also states that although plaintiff claims that defendant Quain was deliberately indifferent when he failed to order x-rays, it would have been Dr. Ellen's decision whether x-rays were appropriate.

Finally, although plaintiff alleges that defendant Quain was in some way involved with plaintiff's restricted diet, defendant Quain states that the restricted diet was imposed for disciplinary reasons, and Quain had no involvement in the decision to place plaintiff on the restricted diet. Quain Aff. ¶ 15, Ex. C. The exhibit attached to the Quain affidavit shows that plaintiff was "sentenced" to a restricted diet several times due to the results of disciplinary hearings. *Id.* Generally, the diet was imposed as a punishment when plaintiff threw unknown substances on corrections personnel. *Id.* Thus, plaintiff has shown no question of fact regarding his care by defendant Quain, and the case may be dismissed as against this defendant.

**7.    Retaliation**

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for adverse action taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)(citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002); *Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997).  The court must keep in mind that claims of retaliation are "easily fabricated" and thus, plaintiff must set forth non-conclusory allegations. *Id.* (citing *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001)[5]).

The court in *Dawes* stated that in order to survive **summary dismissal**, the plaintiff's "non-conclusory" allegations must establish

> (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action.

239 F.3d at 492 (citations omitted).  Additionally, the retaliatory action must be sufficient to "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional right." *Id.* at 493.

There is no question that filing grievances and filing lawsuits are protected

---

[5] The *Bennett* case indicates that *Dawes* was "overruled on other grounds" by *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), but this is apparently an error because a LEXIS search reveals that *Dawes* was not overruled by *Swierkiewicz*.  It does not appear that *Dawes* was overruled at all.

activities under the First Amendment.  In plaintiff's amended complaint, he claims that "almost immediately" after he filed grievances and met with the Inspector General's Office and filed this law suit, plaintiff was "met with" excessive SHU time and "additional sentencing" by the Clinton County Court. AC ¶¶ 29-31.  The court would first point out that plaintiff does not allege how he was "met with" excessive SHU time.  He does not specify any disciplinary hearings that he believes were unfounded or how any of the named defendants were involved in the alleged retaliation.  Additionally, plaintiff alleges that he was given "additional sentencing" by the Clinton County Court.  However, defense counsel has produced documents showing that plaintiff was convicted on January 10, 2002 in Clinton County Court of aggravated employee harassment and was sentenced to 1½ to 3 years imprisonment to run consecutively to his existing sentence. Holohan Aff. Ex. A.  Plaintiff ***pled guilty*** to the charge. *Id.*  Plaintiff testified at his deposition that the criminal conviction had nothing to do with the events of April 17, 2000. (T. 10).  Thus, plaintiff has failed to support his claim of retaliation by either showing that ***these*** defendants took adverse action against plaintiff or that any allegedly adverse action was motivated by plaintiff's protected speech, and this claim may be dismissed as against all defendants.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendants' motion to dismiss (Dkt. No. 36) be **GRANTED**, and the complaint **DISMISSED WITHOUT PREJUDICE** as to the

excessive force claim as against defendants **PERKINS, REISDORF, and GLASCOCK**, and it is further

 **RECOMMENDED,** that defendants' motion for summary judgment (Dkt. No. 36) be **GRANTED**, and the complaint **DISMISSED WITH PREJUDICE** as to all other defendants for all claims.

 Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 21, 2005

           _____
           Hon. Gustave J. DiBianco
           U.S. Magistrate Judge